McIlvaine, J.,
dissenting. In my judgment the statute under consideration, commonly called the Scott law, is constitutional in all its parts. My views on this subject are expressed in the opinion in State v. Frame, 39 Ohio St. 298, whereby the constitutionality of the statute was declared. The different judgment reached in this case was not the result of any change in the questions presented or the arguments of counsel, in the statute or the constitution of the state, but solely by a change in the constitution of this court. For this reason I should not give further expression of my views were not Frame’s case now overruled on grounds which I think cannot be maintained.
In June last, the case of Butzman v. Whitbeck was decided by this court (Chief Justice Johnson and myself dissenting) in which it was held that the second section of the Scott law, in so far as it provided for a lien on real estate occupied by a tenant who is a dealer in liquors is, in effect, a license law and therefore unconstitutional. This conclusion was reached by a majority of the court, as expressed in the opinion thus : that the second clause of the section which provides “that whoever shall engage or continue in the business aforesaid of selling intoxicating liquors in or upon land or premises not owned by him, and without the written consent of the owner thereof, shall be held guilty of a misdemeanor and liable to be fined or imprisoned or both; and each day’s continuance upon such premises shall be an additional offense ” was in its operation and effect a license law and in conflict with section 18 of the schedule in the constitution. And as corollary to this conclusion it was said, “ This provision and,that concerning the lien upon the owner’s premises of the' assessment against the business of the tenant, so depend upon each other in the general scheme and purpose of section two, that both are involved in a common infirmity and must fall together.”
Section 1 of the act is as follows: “ That upon the business *372 of trafficking in intoxicating liquors, there shall be assessed, yearly, and shall be paid into the county treasury, by every person engaged therein as hereinafter provided, and for each place where such business is carried on, by or for such person, the sum of two hundred dollars,” &c. 80 Ohio Laws, 164.
And section 2, construed in Butzman’s case, reads thus: “ That said assessments, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted, as of the fourth Monday of April each year, and shall be paid at the times provided for by law for the payment of taxes on real or personal property within the state, to wit: one-half on or before the twentieth day of June, and one-lialf on or beforé the twentieth day of December, of each year. Provided, where any such business shall be commenced in any year after said Monday, said assessment shall be proportionate in amount to the remainder of the assessment year, except that it shall in no case bo less than twenty-five dollars, and the same shall attach and operate as a lien, as aforesaid, at the date of, and be paid within ten days after, such commencement; and that whoever shall engage or continue in the business aforesaid, of selling intoxicating liquors in or upon land or premises not owned by him, and without the written consent of the owner thereof, shall be held guilty of a misdemeanor, and liable to be indicted and punished by a fine not exceeding one hundred dollars, nor less than twenty-five dollars, or by imprisonment in the county jail not exceeding ten days, or both, at the discretion of the court; and each day’s continuance upon such premises shall be an additional offense.” 81 Ohio Laws, 204.
Without undertaking now to show that the last clause in section 2 is not, in effect, a license law, but is a mere regulation imposed upon the traffic in liquors, or that the first clause of the section imposing a lien on the premises where liquors are sold, is not so connected with the last clause that they must stand or fall together, I will proceed to show that there is no such dependence of the first section, which imposes the tax or assessment, on the second section, which imposes the lien, that if the latter fails, the former must also fail.
*373 It is not claimed, by the majority, that there is anything in the lien itself which savors of a license to sell intoxicating liquors, which would make it obnoxious to section 18 of the schedule. It is not claimed that every lien is a license, nor is it claimed that every tax or assessment is a license. It is not denied, nor can it be, that one clause or section in a statute may conflict with the constitution, and, therefore, be void, while the remainder of the statute remain in full force; but in the case before us, it is held by a majority of the court that the Scott law, in so far as it provides for a tax or assessment on the business of trafficking in liquors, is unconstitutional and void, for the reason that the second section of the act, which makes such assessment a lien on the premises where sold, is unconstitutional and void, as decided in Butzman’s case. The reason assigned in the syllabus, as well as in the opinion of the court, is thus stated: “Inasmuch as it is plainly unrea^ sonable and improbable that the general assembly would have passed the Scott law, with the provisions giving a lien for the tax on premises occupied by tenants eliminated therefrom, the whole act, so far as it provides for such assessment or tax, is unconstitutional and void.” By what process of reasoning did the majority arrive at this conclusion ?
This conclusion must be based on the statute, otherwise it is unauthorized. Let us look to the statute. It is perfectly plain to my mind that its main and controlling purpose was to impose a burden on the business of trafficking in intoxicating liquors, and thereby to diminish the evils resulting therefrom. The controlling object of the statute was not to impose a burden on real estate. The lien on the premises, where liquor was sold, as provided in section 2, was a mere incident to section 1, a means of enforcing the payment of the assessment. If the lien were the only means of enforcing the assessment, there would be some ground for the conclusion reached by the court, as it would be improbable that the legislature would impose the assessment, if it knew that it could not be enforced. But the lien of section 2 was not the only means provided by the statute for the enforcement of the assessment. The fifth section provides: “ That the county *374 treasurer shall collect and receipt for all assessments so returned to Him. And if any assessment shall not be paid when due, he shall forthwith proceed as provided by section one thousand one hundred and four (1104) of the Revised Statutes, to enforce the lien for the same and penalty ; and the provisions of said section and any other provisions of the law of this state relative to the collection of taxes or assessments are hereby made applicable to the enforcement of such liens, and the collection of such assessments and penalties,” &c. By this section, all the personal property employed in the business, and all other property owned by the dealer, without exemptions, could be distrained by the treasurer for the payment of the assessment. The main object of the statute could, by its own provisions, be fully accomplished without the lien provided by the second section, and, therefore, the court is not justified in holding that “.it is plainly unreasonable and improbable that the general assembly would have passed the Scott law, with the provisions giving a lien for the tax on premises occupied by tenants eliminated therefrom!” On the contrary, in my judgment, it is plainly reasonable and altogether probable that' the statute would have passed with section 2 eliminated therefrom, inasmuch as the statute, with section 2 eliminated, makes full and ample provision for the enforcement of the assessment.
This is the whole case.